547 A.2d 751

Mark A. ROSEMAN, Executor of the Estate of Hyman A. Roseman, Deceased, Appellant,

v.

HOSPITAL OF the UNIVERSITY OF PENNSYLVANIA, Dr. Richard A. Davis, and Abbott Laboratories.

Mark A. ROSEMAN, Executor of the Estate of Hyman A. Roseman, Deceased, on Behalf of the Deceased and Further on Behalf of the Deceased's Survivors,

v.

Dr. Richard A. DAVIS, Hospital of the University of Pennsylvania, Abbott Company and Abbott Laboratories.

Appeal of ABBOTT LABORATORIES, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 13, 1988.

Filed July 18, 1988.

Reargument Denied Sept. 14, 1988.

Lewis Kates, Philadelphia, for Roseman.

Joseph H. Foster, Philadelphia, for Hosp. of University of Pennsylvania.

Charles B. Burr, II, Philadelphia, for Dr. Richard Davis.

Joseph G. Manta, Philadelphia, for Abbott Laboratories.

Before CAVANAUGH, ROWLEY and POPOVICH, JJ.

CAVANAUGH, Judge:

In the consolidated appeals before this court the issue at Appeal No. 02077, Philadelphia, 1987, is whether the court below properly entered judgment of non pros in favor of the Hospital of The University of Pennsylvania (HUP) and Dr. Richard A. Davis, defendants below and against Mark A. Roseman, Executor of the Estate of Hyman A. Roseman, Deceased, the plaintiff below and appellee herein. With respect to the appeal at No. 02287 Philadelphia, 1987, we must initially determine whether the appeal should be quashed as from an interlocutory order.

Because of the complexity of the case, it is necessary to set forth the factual and procedural background. Hyman A. Roseman was injured in May, 1976, and was confined to the Hospital of the University of Pennsylvania. At the hospital he was under the care of Richard A. Davis, M.D., a neurosurgeon, who operated on Mr. Roseman. Allegedly, a contaminated saline solution, which was used in the operation, had been manufactured by defendant, Abbott Labora-

tories. As a result of the operation and use of the solution, Mr. Roseman suffered an infection in his brain. His condition deteriorated and he remained in a coma until he died on May 5, 1978.

In May, 1978, plaintiff, Hyman A. Roseman, filed a summons in a medical malpractice action against the Hospital of the University of Pennsylvania, Dr. Richard A. Davis, and Abbott Laboratories.

In June, 1978, The Hospital of the University of Pennsylvania issued a rule on the plaintiff to file a complaint, and a complaint was not filed until September 24, 1979. A number of witnesses were subsequently deposed.

On June 3, 1987 the court below by Lehrer, J. entered a judgment of non pros in favor of HUP and the other two defendants in the case, Dr. Richard A. Davis, and Abbott Laboratories. Shortly thereafter, the court below vacated the judgments of non pros and subsequently entered non pros as to HUP and Dr. Davis and refused to enter a non pros as to Abbott Laboratories. The decision to enter a judgment of non pros is within the sound discretion of the trial court and its decision may be set aside only if there is a manifest abuse of discretion. *First Valley Bank v. Steinmann*, 253 Pa.Super. 8, 384 A.2d 949 (1978); *Nath v. St. Clair Memorial Hospital*, 251 Pa.Super. 361, 380 A.2d 820 (1977). See also *Narducci v. Mason's Discount Store*, 518 Pa. 94, 541 A.2d 323 (1988).

In determining whether the court below abused its discretion in entering a judgment of non pros, three factors must be considered: (1) whether the plaintiff has shown a want of due diligence in failing to proceed with reasonable promptness; (2) whether there was any compelling reason for the delay; and (3) whether the delay caused some prejudice to the defendant. *James Brothers Lumber Co. v. Union Banking and Trust Co. of DuBois, Pennsylvania*, 432 Pa. 129, 247 A.2d 587 (1968); *American Bank and Trust Company v. Ritter, Todd & Haayen*, 274 Pa.Super. 285, 418 A.2d 408 (1980); *Moore v. George Heebner, Inc.*, 321 Pa.Super. 226, 467 A.2d 1336 (1983).

■ The action in the instant case was commenced in May, 1978. On September 11, 1981 the court below granted the plaintiff an extension of time until December 31, 1981 to file a certificate of readiness. The certificate was not filed until November 10, 1986 when the plaintiff attempted to file it, *nunc pro tunc.* On January 12, 1987 the court denied the plaintiff's petition to file the certificate of readiness *nunc pro tunc.*

On June 1, 1978, the defendant, HUP, served interrogatories upon the then counsel for the plaintiff seeking, *inter alia,* expert witness information. On June 20, 1979, HUP served supplemental expert interrogatories on the plaintiff. On October 12, 1979 HUP filed a Motion for Sanctions to Compel Answers to Interrogatories as the plaintiff had not answered them. On October 29, 1979 the administrator of the arbitration panel for Health Care entered an order compelling the plaintiff to answer the interrogatories and supplemental interrogatories of HUP. On October 31, 1979 the plaintiff served their answers to HUP's interrogatories and supplemental interrogatories and in the plaintiff's answers to the supplemental interrogatories the plaintiff stated that "once all discovery is concluded by all parties to this action and all facts are then known of record, plaintiff will then submit supplemental answers to defendant." Counsel for HUP did not agree to this open ended extension and granted an extension of 60 days to gather the information needed to answer the interrogatories.

The plaintiff did not supply expert witness reports responsive to HUP's interrogatories and supplemental interrogatories until January 21, 1987, eight and a half years after HUP requested expert witness information. While plaintiff's present counsel did not become involved in the case until March, 1985, HUP furnished copies of the hospital records to prior counsel before 1980. In fact, the "Answer of Plaintiff to Defendant Hospital of the University of Pennsylvania's Motion for Entry of Judgment of Non Pros" stated, *inter alia,*

m. This action was then commenced on May 12, 1978.

n. The pleadings and activities of plaintiff in this action have been constant, intense and fully in accord with the rules.[1]

o. On March 12, 1985, new counsel for plaintiff entered his appearance.

p. *New counsel then reviewed the extensive medical records covering plaintiff's decedent's two year hospitalization and determined that the copies that had been made by and on behalf of the plaintiff were overlapping, incomplete and, to certain substantial extent, unintelligible.*

q. Plaintiff's new counsel then made arrangements with Defendant HUP and its then counsel to have the original hospital records brought to Defendant HUP's counsel's offices.

r. These original records were then examined over a period of several months.

s. Plaintiff's counsel then engaged experts and when their reports came in moved to file a Certificate of Readiness Non [sic] Pro Tunc and petitioned for this case to be assigned to an individual judge. (Emphasis added.)

Plaintiff's previous counsel was involved in reviewing the hospital records before 1980, but the plaintiff did not produce the expert report of Dr. Shane dated September 13, 1985 and the expert report of Dr. Cundy dated October 20, 1986 until January 21, 1987 nor did he attempt to place the case on the trial list until November 10, 1986.

The law does not state with precision how long a delay by the plaintiff in proceeding with litigation amounts to the absence of due diligence. *Manson v. First National Bank,* 366 Pa. 211, 77 A.2d 399 (1951). A statute of limitations contains a built-in hour-glass, but not so the concept of the absence of due diligence. However, a delay in prosecution of a case equal to or longer than the applicable statute of

1. The docket entries show no activity by the plaintiff of any nature from August 14, 1984 to November 10, 1986, a period of almost 28 months. This is hardly consistent with the plaintiff's allegations that his activities and pleadings have been constant and intense.

limitations, has usually been found sufficient to warrant a judgment of non pros if the other requirements that there was no compelling reason for the delay, and the delay has prejudiced the other party, are present. *Carter v. Amick,* 246 Pa.Super. 530, 371 A.2d 961 (1977).[2] We conclude that the plaintiff below did not act with due diligence.

■ The second requirement for entry of non pros, absence of a compelling reason for delay, is met. Although present counsel has only been involved in the case since 1985, prior counsel had some 7 years to proceed to trial and answer the interrogatories of HUP pertaining to expert witnesses and complete the taking of depositions. Moreover, present counsel's protestations of contemporary diligence serves to point up prior counsel's lack of diligence. A litigant is bound by his counsel's stewardship and a failure of due diligence is not cured by belated substitution of counsel. The plaintiff had the records from HUP for many years and if he wanted additional information or if the records were not clear, he should not have let the years slip by without taking some action to correct the situation. The plaintiff admits that "HUP first requested Roseman to identify his expert witnesses and produce expert reports on June 6, 1978." Appellant, Roseman's, brief, page 8. The record does not support the plaintiff's position that counsel for HUP agreed that the plaintiff should identify his expert witnesses and produce expert reports when discovery was completed. On the contrary, counsel for HUP objected to this procedure which the plaintiff wanted to follow.

Finally, we come to the element of prejudice. We agree with the court below that the delay has caused prejudice to HUP. As noted in *Supplee v. Commonwealth of Pennsyl-*

2. In *Carroll v. Kimmel,* 362 Pa.Super. 432, 524 A.2d 954 (1987) there was a five year delay in pursuing a medical malpractice claim. We stated at 362 Pa.Super. 437, 524 A.2d 956:

> The delay here continued for a period of time far longer than the two-year statute of limitations governing appellant's claims of negligence. Consequently, the court's finding that appellant failed to act diligently is confirmed.

*vania, Department of Transportation,* 105 Pa.Cmwlth.Ct. 488, 493–4, 524 A.2d 1002, 1005 (1987):

> A lengthy delay, such as the ten-year delay being addressed in this case, is presumptively prejudicial to all parties even without a specific showing of prejudice on the record. *Shrum v. Pennsylvania Electric Company,* 440 Pa. 383, 269 A.2d 502 (1970).

■ In the instant case, actual prejudice was shown to HUP. Under the complaint, alternative theories of recovery were set forth alleging that HUP was *negligent* pursuant to the Restatement of Torts (Second) § 328 D and was *strictly liable* pursuant to the provisions of Restatement of Torts (Second) § 402 A. It would be essential for HUP to know what the plaintiff's experts would testify to in order to prepare a defense. Without this information, the hospital would not know whether the plaintiff would be proceeding at trial on a theory of negligence or absolute liability. In our opinion, HUP has demonstrated that it has suffered prejudice which includes any substantial diminution of the ability to present factual information at trial which has been caused by the plaintiff's delay. *American Bank & Trust Company v. Ritter, Todd & Haayen, supra.* Since all three factors to be considered in granting a judgment of non pros militate towards the appropriateness of the judgment of non pros, the court below did not manifestly abuse its discretion in granting the motion and the entry of the judgment of non pros was most appropriate.

Judge Avellino denied a motion for sanctions *filed by Dr. Davis* concerning failure to answer expert interrogatories. The general rule is that it is improper for a trial judge to overrule an interlocutory order by another judge in the same case, in the absence of new evidence. *Jaden Electric v. Wyoming Valley West School District,* 342 Pa.Super. 587, 493 A.2d 746 (1985). However, Judge Avellino's order related only to Dr. Davis and Judge Lehrer's grant of judgment of non pros in favor of HUP did not overrule Judge Avellino's order in any way. Judge Avellino's order dealt only with the narrow issue of sanctions while the

order of Judge Lehrer dealt with the broader question of entry of non pros for failure to proceed in a timely manner.

■ In our opinion, the matter was not prosecuted with due diligence as to HUP and there was no justification for the delay. Although the case started in arbitration and then had to be transferred to the Court of Common Pleas, and a number of expert witnesses had to be deposed,[3] this does not justify delay of over 11 years in proceeding to trial, especially where the dockets reflect no activity for a period in excess of 2 years at one point in the proceedings. To hold otherwise would condone as duly diligent the management of litigation which, measured by any reasonable standard of efficiency, is tantamount to a *de facto* abandonment meriting dismissal. Accordingly, the judgment of non pros as to the Hospital of the University of Pennsylvania will be sustained. While the court below properly entered judgment of non pros as to HUP, it erred in entering such judgment as to Dr. Richard A. Davis.

A trial court may not sua sponte enter a judgment of non pros under Pa.R.C.P. 1037(c). *Hatalowich v. Bednarski*, 315 Pa.Super. 303, 461 A.2d 1292 (1983). See also *Hoffman v. Hoffman*, 350 Pa.Super. 280, 504 A.2d 356 (1986). Rule 1037(c) reads:

> In all cases, the court, on *motion of a party*, may enter an appropriate judgment against a party upon default or admission. (Emphasis added).

In this case only the Hospital of the University of Pennsylvania moved for the entry of a judgment of non pros. The appellee, Dr. Richard Davis, argues that his counsel wrote to the Clerk of the Motions Court stating that it joined in the motion of HUP for entry of judgment of non pros. However, the record does not indicate that the clerk received such a letter nor does the joinder in the motion

---

**3.** The plaintiff's brief on appeal at pages 7 and 8 lists the depositions which were taken. Most were taken in the years 1981, 1982 and 1983. Only one deposition was listed as being taken in 1984. Since the last deposition was taken about 2 years before the plaintiff even attempted to file his certificate of readiness *nunc pro tunc,* the taking of depositions is not a valid reason for delay in proceeding with the case.

appear on the docket entries. This coattail approach does not constitute a motion for judgment of non pros. Accordingly, the court erred in entering a non suit as to Dr. Richard A. Davis.[4]

 Because this issue regarding the timeliness of the appellant's response as to Dr. Davis had already been decided by a Common Pleas Court Judge of Philadelphia County, the second judge who reviewed that same record was bound by the resolution of that issue because no new evidence had been presented. *Jaden Electric v. Wyoming Valley West School District, supra.* As noted above, this order did not apply to HUP's motion for non pros.

 A motion to quash the appeal of Abbott Laboratories has been filed by Mark A. Roseman and we grant this motion. Generally, we recognize that an appeal will lie only from final orders, unless permitted by statute. *Jay Dee Contractors v. National Mine Service Co., Inc.,* 335 Pa.Super. 39, 483 A.2d 943 (1984). In examining questions of finality, we must consider the practical ramifications of the order rather than the technical effects of the ruling. *Jackson v. Moultrie,* 288 Pa.Super. 252, 431 A.2d 1033 (1981); *Newman v. Thorn,* 359 Pa.Super. 274, 518 A.2d 1231 (1986). Under these guidelines, there is no doubt that the appeal by Abbott is interlocutory and nonappealable because it denied Abbott Laboratories' motion to non pros the case against it. Hence, the lawsuit is pending against Abbott.

According to Abbott, the appeal is interlocutory but appealable as of right because it is from an interlocutory order vacating, opening or striking a judgment. Pa.R.A.P. 311(a)(1). However, in this case, the order vacating the judgment was entered on June 29, 1987. If Abbott was appealing from that order, the appeal would have been quashed on the grounds that it was untimely filed. The

4. In addition, we note that on February 11, 1987, Judge Bernard J. Avellino denied Dr. Davis' motion for sanctions in the following order: AND NOW, to wit, this 11th day of February, 1987, Defendant's Doctor Richard A. Davis Motion for Sanctions for failure to answer Expert Interrogatories is denied as moot, it appearing in Plaintiff's answer thereto that Plaintiff filed Answers to Interrogatories.

record establishes that Abbott's notice of appeal was filed on August 19, 1987. See Pa.R.A.P. 903. The appeal of Abbott Laboratories must be quashed.

The order appealed from at No. 02077 Philadelphia, 1987, is affirmed as to the Hospital of the University of Pennsylvania and reversed as to Dr. Richard A. Davis. The appeal at No. 02287, Philadelphia, 1987, is quashed.